JASON R. FLANDERS, SBN 238007
Email: jrf@atalawgroup.com
ERICA A. MAHARG, SBN 279369
Email: eam@atalawgroup.com
AQUA TERRA AERIS LAW GROUP
4030 Martin Luther King Jr. Way
Oakland, CA 94609
Telephone: (916) 202-3018

ERIN K. CLANCY, SBN 249197
Email: erin@cacoastkeeper.org
CALIFORNIA COASTKEEPER ALLIANCE
1100 11th Street, 3rd Floor
Sacramento, CA 95814
Telephone: (619) 313-3037

Attorneys for Plaintiff CALIFORNIA COASTKEEPER ALLIANCE

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CALIFORNIA COASTKEEPER ALLIANCE, <br><br> Plaintiffs, <br><br> v. <br><br> COSUMNES CORPORATION dba MURIETA EQUESTRIAN CENTER <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR CIVIL PENALTIES AND INJUNCTIVE AND DECLARATORY RELIEF FOR VIOLATION OF WATER POLLUTION CONTROL ACT (33 U.S.C. § 1311)** |

COMPLAINT

California Coastkeeper Alliance ("Plaintiff"), by and through its counsel of record, hereby alleges:

## I. JURISDICTION AND VENUE

1. This is a civil suit brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq*. ("Clean Water Act" or "CWA") (33 U.S.C. § 1365).

2. This Court has subject matter jurisdiction over the parties and this action pursuant to 33 U.S.C. § 1365(a)(1), and 28 U.S.C. §§ 1331 and 2201 (an action for declaratory and injunctive relief arising under the Constitution and laws of the United States).

3. On June 22, 2020, Plaintiff issued a notice of intent to sue letter ("Notice Letter") to Cosumnes Corporation dba Murieta Equestrian Center ("Defendant"), providing notice of Defendants' violations of the CWA and the Resources Conservation and Recovery Act ("RCRA") and of Plaintiff's intention to file suit against Defendant, to the Administrator of the United States Environmental Protection Agency ("EPA"), Andrew Wheeler; the U.S. Attorney General, William Barr; the Administrator of EPA Region 9, John Busterud; the Executive Director of the State Water Resources Control Board ("State Water Board"), Eileen Sobeck; the Executive Officer of the Central Valley Regional Water Quality Control Board, Patrick Pulupa; the Acting Director of the California Department of Resources Recycling ("CalRecycle"); and to Defendant's registered Agent for Service of Process, as required by 33 U.S.C. § 1365(b)(1)(A); 42 U.S.C. § 6972(b)(2). *See also* 40 C.F.R. § 135.2(a)(1). A true and correct copy of the June 22, 2020 Notice Letter is attached as "Exhibit A" and incorporated herein by reference.

4. More than sixty (60) days have passed since the Notice Letter was served on Defendant and the State and Federal agencies. Plaintiff is informed and believes, and thereon alleges, that neither the EPA, nor the State of California has commenced or is diligently prosecuting an action to redress the violations alleged in this Complaint. *See* 33 U.S.C. § 1365(b)(1)(B). This action is not barred by any prior administrative penalty under Section 309(g) of the CWA. 33 U.S.C. § 1319(g).

5. The Court has venue pursuant to 28 U.S.C. § 1391. The Defendant is registered with the Secretary of State in the District. Venue is also proper here because the events giving rise to the claim, namely the unlawful discharges and disposals at Murieta Equestrian Center, occurred and are

1  occurring within the District. *Id.*, at § 1391(b)(2).

2        6.    Defendant owns and operates Murieta Equestrian Center.

3        7.    Murieta Equestrian Center is located at 7200 Lone Pine Drive, Suite 200, Rancho Murieta, CA 95683 ("Facility").

      8.    Plaintiff is informed and believes that as a result of Defendant's operations at Murieta Equestrian Center, discussed *infra*, the Facility has discharged and continues to discharge polluted process wastewater and industrial stormwater into waters of the United States, including the Cosumnes River, without a National Pollutant Discharge Elimination System permit in violation of section 301(a) of the CWA. 33 U.S.C. § 1311.

      9.    The relief sought herein will redress the harms to Plaintiff caused by Defendant's activities.

## II. THE PARTIES

      10.    Plaintiff California Coastkeeper Alliance is an environmental group, organized as a non-profit corporation in accordance with the laws of the State of California. Using law, policy and science, the Alliance advances statewide policies and programs for healthy and clean waters. The Alliance works with local Waterkeepers to develop, implement, and defend policies that meet the needs of California's distinct communities and ecosystems. Additionally, the Alliance actively seeks federal and state agency implementation of the CWA and, where necessary, initiates enforcement actions on behalf of itself and its members. The Alliance's offices are located at 1100 11th Street, 3rd Floor, Sacramento, CA 95814.

      11.    The Alliance and its individual and organizational members have an interest in the preservation and use of waters statewide, including the Cosumnes River. Specifically, the Alliance's members picnic, fish, hike, wade, bike, and enjoy the wildlife in and around these waters, including the Cosumnes River. Defendant's actions, in combination with the activities of other landowners adjacent to the Cosumnes River, result in numerous injuries to the Alliance's interests, such as: loss, destruction, or damage to wetlands and waterways; diminished aesthetic enjoyment; loss of open space and habitat for wildlife, including wading birds and federally protected species; degraded water quality; and diminished quality of life. The ability of the Alliance's members to picnic, fish, hike,

wade, bike, and enjoy the wildlife in and around these waters and to use and enjoy the Cosumnes River and other waters downstream of the Facility is harmed by Defendant's violations of law.

12. Defendant is the owner and operator of the Facility. The Facility has been operating since 1982.

13. Defendant is a business corporation incorporated under the laws of the State of California and is located at the same address of the Facility, 7200 Lone Pine Drive, Suite 200, Rancho Murieta, CA 95683.

14. Cosumnes Corporation does business under the fictitious business name Murieta Equestrian Center, also located at 7200 Lone Pine Drive, Suite 200, Rancho Murieta, CA 95683.

15. Murieta Equestrian Center provides and manages equine boarding accommodations 365 days a year and manages multiple equestrian competitions and shows each year. The Facility has several outdoor arenas and indoor arenas; spectator seating; dry camping and RV accommodations with a sewer site, dumping station dumpsters, restrooms and showers; a café; and cattle facilities.

16. Based on the Facility's website and other publicly-available information, Plaintiff is informed and believes that Murieta Equestrian Center can accommodate up to 1,000 horses per equestrian event. Plaintiff is informed and believes that Murieta Equestrian Center is one of the largest horse boarding facilities in California.

**III.    LEGAL BACKGROUND**

THE CLEAN WATER ACT

17. Section 301 of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants into waters of the United States by any person from a point source without a National Pollutant Discharge Elimination System (NPDES) permit issued pursuant to the CWA, 33 U.S.C. § 1342.

18. The CWA defines point sources to include concentrated animal feeding operations ("CAFOs"). 33 U.S.C. § 1362(14); 40 CFR § 122.23(a).

19. To constitute a CAFO, a facility must first be classified as an Animal Feeding Operation ("AFO"). An AFO is defined as a lot or facility where "(i) Animals . . . have been, are, or will be stabled or confined and fed or maintained for a total of 45 days or more in any 12-month period, and (ii) Crops, vegetation, forage growth, or post-harvest residues are not sustained in the normal

growing season over any portion of the lot or facility." 40 C.F.R. § 122.23.

20. Once classified as an AFO, a facility may be subsequently classified as either a "Large CAFO" or a "Medium CAFO." 40 C.F.R. § 122.23(4), (6).

21. A "Large CAFO" for horses is a facility that has 500 horses or more at the facility at least 45 days in any 12-month period. 40 C.F.R. § 122.23(4)(vi).

22. A facility is classified as a "Medium CAFO" if it has 150-499 horses and it either: (1) discharges "into waters of the United States through a man-made ditch, flushing system, or other similar man-made device"; or (2) "[p]ollutants are discharged directly into waters of the United States which originate outside of and pass over, across, or through the facility or otherwise come into direct contact with the animals confined in the operation." 40 C.F.R. § 122.23(6).

23. The CWA defines "pollutants" to encompass waste typically produced at CAFOs, including biological materials and agricultural waste. 33 U.S.C. § 1362(6).

24. CAFOs that discharge pollutants to a water of the United States must have an NPDES permit at the time of the discharge. 40 C.F.R. § 122.23(f).

25. "NPDES requirements for CAFOs apply with respect to all animals in confinement at the operation and all manure, litter, and process wastewater generated by those animals or the production of those animals." 40 C.F.R. 122.23(a). Process wastewater is defined as "water directly or indirectly used in the operation of the AFO for any or all of the following: spillage or overflow from animal or poultry watering systems; washing, cleaning, or flushing pens, barns, manure pits, or other AFO facilities; direct contact swimming, washing, or spray cooling of animals; or dust control. Process wastewater also includes any water which comes into contact with any raw materials, products, or byproducts including manure, litter, feed, milk, eggs or bedding." 40 C.F.R. § 122.23(b)(7).

26. Every discharge of a pollutant from a CAFO into waters of the United States without an NPDES permit is a violation of section 301(a) of the CWA. 33 U.S.C. § 1311(a).

27. NPDES permittees must comply with technology-based effluent limitations that constitute the "Best Available Technology" ("BAT") and "Best Conventional Pollution Control Technology" ("BCT").

28. NPDES permittees must also comply with more stringent water quality-based effluent limitations to ensure that discharges do not cause or contribute to a violation of a water quality standard.

29. Federal regulations include specific requirements for CAFOs that discharge processed wastewater, including any stormwater or other water that comes into contact with manure or bedding and the water from the wash racks. 40 C.F.R. § 122.23. Large horse CAFOs must retain (*i.e*., not discharge) all of their process wastewater. 40 C.F.R. § 412.13(a). The discharge of process wastewater is permissible only when rainfall events cause an overflow from a facility designed to contain all process wastewater plus the runoff from a 25-year, 24-hour rainfall event. 40 C.F.R. § 412.13(6).

30. In addition, all permits authorizing the discharge of process wastewater from a CAFO must require implementation of a nutrient management plan ("NMP") that, at a minimum, contains best management practices ("BMPs") necessary to meet enumerated requirements and applicable effluent limitations and standards. 40 C.F.R. § 122.42(e)(1).

31. The CWA also prohibits unpermitted stormwater discharges associated with industrial activity. 33 U.S.C. §§ 1311, 1342(p)(2)(B); 40 C.F.R. § 122.26.

32. Stormwater discharges from large CAFOs are subject to permitting requirements because they constitute industrial activities. 40 C.F.R. §§ 122.26(b)(14)(i), 122.23; California Industrial General Permit, Attachment A.1.

33. In California, the State Board has issued a single, statewide general permit ("Industrial General Permit") applicable to all stormwater discharges associated with industrial activity. On April 17, 1997, the State Board adopted the 1997 Permit, which was in effect through June 30, 2015. On July 1, 2015, the 2015 Permit became effective and superseded the 1997 Permit, except for enforcement purposes.

34. To discharge stormwater lawfully in California, industrial dischargers (i.e., facility operators) must secure coverage under the Industrial General Permit by filing a notice of intent and complying with its terms or obtaining and complying with an individual NPDES permit. 2015 Permit, Section I(A) (Findings 8, 12), Attachment A.1, Attachment C (defining "discharger").

35. The Industrial General Permit is an NPDES permit issued pursuant to CWA section

402(p), 33 U.S.C. § 1342(p). Violations of the Industrial General Permit are also violations of the CWA. 1997 Permit, Section C(1); 2015 Permit, Section XXI(A).

36. The Industrial General Permit contains certain absolute prohibitions. The Industrial General Permit prohibits the direct or indirect discharge of materials other than stormwater ("non-stormwater discharges"), which are not otherwise authorized by an NPDES permit, to the waters of the United States. 1997 Permit, Order Part A(1); 2015 Permit, Section III(B). The Industrial General Permit prohibits stormwater discharges that cause or threaten to cause pollution, contamination, or nuisance (1997 Permit, Order Part A(2); 2015 Permit, Sections III(C), VI(C)) and discharges that adversely impact human health or the environment (1997 Permit, Order Part C(1); 2015 Permit, Section VI(B).) Finally, the Industrial General Permit prohibits discharges that cause or contribute to an exceedance of any applicable Water Quality Standard contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan. 1997 Permit, Order Part C(2); 2015 Permit, Section VI(A).

37. Under the CWA and the Industrial General Permit, dischargers must employ BMPs that constitute BAT and/or BCT to reduce or eliminate stormwater pollution. 33 U.S.C. § 1311(b); 1997 Permit, Order Part B(3); 2015 Permit, Section X(H).

38. Dischargers must develop and implement a Storm Water Pollution Prevention Plan ("SWPPP") at the time industrial activities begin. 1997 Permit, Section A(1)(a) and Order Part E(2); 2015 Permit, Sections I(I) (Finding 54), X(B).

## IV.   FACTUAL BACKGROUND

39. Based on visual observations and publicly-available information, Plaintiff is informed and believes that polluted stormwater and process wastewater from the Facility discharges via drainage ditches to the Cosumnes River, a water of the United States that is protected by the CWA.

40. The Cosumnes River's designated beneficial uses include municipal and domestic supply, agriculture, cold and warm freshwater habitat, cold and warm migration, fish spawning, water contact recreation, non-water contact recreation, and wildlife habitat.

41. The Cosumnes River is listed as impaired for indicator bacteria, toxicity, and invasive species under Section 303(d) of the CWA.

42. The American River Integrated Regional Water Management Plan 2018 ("2018 IRWMP") published by the Regional Water Authority states that the water quality of the Cosumnes River is also negatively impacted by levels of nitrogen, phosphorus, and suspended sediments.

43. The 2018 IRWMP confirms that downstream of Rancho Murieta and the Facility, the Cosumnes River "support[s] one of the biologically richest regions in California's Central Valley." Below Highway 99 it enters the nearly 50,000-acre Cosumnes River Preserve, which include some of the largest remaining wetlands and riparian areas in the Central Valley. "Marshes and grasslands provide wintering grounds for tens of thousands of migrating birds, songbirds and raptors, including sandhill crane, tundra swan, and great blue heron. The river is home to a number of resident, fall-run native fishes . . .." *Id*.

44. Based on the Facility's website and other publicly-available information about the Facility, Plaintiff is informed and believes that the Facility confines and feeds horses for a total of 45 days or more in a 12-month period where crops, vegetation, or forage growth are not maintained in the normal growing season.

45. Plaintiff is further informed and believes that the Facility provides stables, show and warm-up arenas, trailer, truck, and RV parking, horse wash areas, permanent and temporary bathroom facilities, a café, and other similar facilities common to equestrian events.

46. Plaintiff is informed and believes that the Facility provides permanent boarding for up to 379 horses year-round.

47. According to the Murieta Equestrian Center's 2020 Facility Packet available on the Facility's website, Defendant hosts approximately 50 events annually. Plaintiff is informed and believes that in 2019, for example, Defendant hosted 54 events, each ranging from one to ten days. For the 2020 calendar year, at least thirteen horse shows took place or are scheduled to take place at Murieta Equestrian Center for a total of at least 41 days during the ongoing COVID-19 pandemic. Plaintiff is informed and believes that horses are permitted to arrive three days in advance of any event hosted at the Facility.

48. Based on publicly-available information about the Facility, Plaintiff is informed and believes that on average 300 horses are at the Facility for each event and the largest event at the Facility included 1,000 horses.

49. Plaintiff is informed and believes that the Facility has had, and continues to have, 500 or more horses present for a total 45 days or more in any 12-month period from June 22, 2015 to present.

50. Based upon Plaintiff's investigation, Plaintiff is informed and believes that Defendant's activities at Murieta Equestrian Center have resulted and continue to result in the discharge of process wastewater and stormwater into the Cosumnes River.

51. During rain events, rain falls onto the Facility and runs through active areas of the Facility, such as stables, arenas, and storage areas, towards drainage ditches or other stormwater conveyance systems that lead to the Cosumnes River. Stormwater comes into direct contact with manure and bedding from the stables and other animal-impacted areas. When the water discharges into the Cosumnes River, it carries pollutants such as phosphorus, nitrogen, and bacteria.

52. Plaintiff is informed and believes that pollutants discharged by Defendant include but are not limited to horse manure, bedding, sediment, equine footing, trash, and other pollutants associated with equine operations.

53. Plaintiff is informed and believes that stormwater comes into direct contact with manure and bedding from the stables and other animal-impacted areas; such water then flows from Murieta Equestrian Center into the Cosumnes River via drainage ditches. Like other equestrian facilities, Plaintiff is informed and believes that these discharges carry pollutants such as phosphorus, nitrogen, trash, and fecal bacteria.

54. Plaintiff is informed and believes that Murieta Equestrian Center has illegally discharged stormwater and process wastewater into waters of the United States during every measurable rain event since June 22, 2015. *See* Exhibit A at Attachment A.

55. Plaintiff is informed and believes that during dry weather, process wastewater from horse wash stations may escape wash racks and/or other areas of the Facility and discharge pollutants eventually ending up in the Cosumnes River.

56. Based upon publicly-available information, Plaintiff is informed and believes that the Defendant has never obtained NPDES permit coverage for any discharges of pollutants from the Facility.

57. Plaintiff is informed and believes that Murieta Equestrian Center has discharged and continues to discharge process wastewater, other pollutants, and stormwater without an NPDES permit.

58. Plaintiff is informed and believes, and thereon alleges, that Defendant has failed to implement technology-based effluent limitations that meet BAT/BCT.

59. Plaintiff is informed and believes, and thereon alleges, that Defendant has failed to implement technology-based effluent limitations specifically required to be implemented at large CAFOs.

60. Plaintiff is informed and believes, and thereon alleges, that Defendant has failed to implement technology-based effluent limitations required by the Industrial General Permit.

61. Plaintiff is informed and believes that discharges of pollutants from the Facility cause or contribute to violations of water quality standards in downstream waters.

## FIRST CAUSE OF ACTION

**(Unlawful Discharge without CWA NPDES Permit, 33 U.S.C. §§ 1311(a), 1342)**

62. Plaintiff incorporates by reference each and every paragraph of this Complaint as though they were set forth in full herein.

63. Plaintiff is informed and believes, and thereon alleges that the Facility constitutes a Large CAFO within the meaning of 40 C.F.R. § 122.23(4)(vi) because it has had, and continues to have, over 500 horses present for a total of 45 days or more in any 12-month period since 1982.

64. Alternatively, Plaintiff is informed and believes, and thereon alleges that the Facility constitutes a Medium CAFO within the meaning of 40 C.F.R. § 122.23(6), because it has had, and continues to have, between 150 and 499 horses for a total of 45 days or more in any 12-month period since 1982, and because it: (1) discharges "into waters of the United States through a man-made ditch, flushing system, or other similar man-made device"; and/or because (2) "[p]ollutants are discharged directly into waters of the United States which originate outside of and pass over, across, or through the facility or otherwise come into direct contact with the animals confined in the operation."

65. Plaintiff is informed and believes that the Facility is a point source within the meaning of the CWA. 33 U.S.C § 1362(14).

66. Plaintiff is informed and believes that the Facility is engaging and has engaged in industrial activities within the meaning of the CWA. 33 U.S.C. §§ 1311, 1342(p)(2)(B); 40 C.F.R. § 122.26.

67. Plaintiff is informed and believes that Defendant has directly discharged and continue to directly discharge process wastewater and other pollutants into the Cosumnes River.

68. Plaintiff is informed and believes that Defendant has never obtained an NPDES permit for the pollutant discharges from the Facility and is thereby in violation of the CWA. 33 U.S.C. §§ 1311(a), 1342.)

69. Plaintiff is informed and believes that Defendant has discharged and continues to discharge contaminated stormwater and/or wastewater into the Cosumnes River from the Facility without a NPDES permit.

70. The violations alleged herein are not wholly past violations, are capable of repetition, and are therefore enforceable in this citizen suit action because the violations and other ongoing and continuous violations result from the same underlying and inadequately resolved conduct.

71. Each day of the last five years that Defendant has discharged water containing pollutants without a NPDES permit or otherwise violated the CWA is a separate and distinct violation of sections 301(a) and 402 of the CWA. 33 U.S.C. §§ 1311(a), 1342.

72. By committing the acts and omissions alleged above, Defendant is subject to an assessment of civil penalties pursuant to sections 309(d) and 505 of the CWA. 33 U.S.C. §§ 1319(d) and 1365.

73. An action for injunctive relief is authorized by CWA section 505(a), 33 U.S.C. § 1365(a). Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and Plaintiff's members, for which harm they have no plain, speedy, or adequate remedy at law.

74. An action for declaratory relief is authorized by 28 U.S.C. § 2201(a) because an actual controversy exists as to the rights and other legal relations of the Parties.

75. Plaintiff has no plain, speedy, or adequate remedy, in the ordinary course of law, other than the relief sought in this Complaint, because there is no other mechanism for compelling Defendant to take the action necessary under the CWA to abate its unlawful discharge of pollutants to waters of the United States.

###

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

76. A Court order declaring Defendant to have violated, and continues to be in violation of, Section 301(a) of the CWA, 33 U.S.C. § 1311, for its unpermitted discharges of process wastewater, stormwater, and pollutants into the Waters of the Unites States, including the Cosumnes River, in violation of the substantive and procedural requirements of the CWA;

77. A Court order enjoining Defendant from further violating the substantive and procedural requirements of Section 301(a) of the CWA, § 1311(a), for unlawful and unpermitted discharges of pollutants into the Waters of the United States, including into the Cosumnes River;

78. A Court order enjoining Defendant to restore all receiving waters damaged by Defendant's illegal discharges of pollutants from the Facility;

79. Order Defendant to pay civil penalties of up to $37,500 per day for each violation occurring before November 2, 2015 and up to $55,800 per day for each violation occurring after November 2, 2016 pursuant to section 309(d) of the CWA, 33 U.S.C. § 1319(d), and the Adjustment of Civil Monetary penalties for Inflation, 40 C.F.R. § 19.4;

80. A Court order awarding Plaintiff its reasonable costs of suit, including attorney, witness, expert, and consultant fees, as permitted by Section 505(d) of the CWA, 33 U.S.C. § 1365(d), and any other applicable theory or law; and

81. Award such other relief as this Court may deem appropriate.

Dated: _August 25, 2020_        CALIFORNIA COASTKEEPER ALLIANCE

By:   /s/ Erin. K. Clancy
      Erin K. Clancy
      Attorney for Plaintiff CALIFORNIA
      COASTKEEPER ALLIANCE

Dated: _August 25, 2020_        AQUA TERRA AERIS LAW GROUP

By:   /s/Erica A. Maharg
      Erica A. Maharg
      Attorneys for Plaintiff CALIFORNIA
      COASTKEEPER ALLIANCE